**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

AGA Medical Corp.,

    Plaintiff,                                          No. 0:10-cv-03734-JNE-JSM

    v.

W. L. Gore & Associates, Inc.,

    Defendant.

## DECLARATION OF DENNIS C. BREMER

I, Dennis C. Bremer, hereby declare as follows:

    1.    I am an attorney with the law firm of Carlson, Caspers, Vandenburgh & Lindquist ("CCVL"), and representing AGA Medical Corporation ("AGA Medical") and ("AGA Medical Holdings") (collectively, "AGA") in connection with the following two cases between AGA and W.L. Gore & Associates, Inc. ("Gore"):  <u>AGA Medical Corp. v. W.L. Gore & Assocs., Inc.</u>, Civ. No. 0:10-cv-3734 (JNE/JSM) (D. Minn; filed August 24, 2010) ("Minnesota Action") and <u>W.L. Gore & Assocs., Inc. v. AGA Medical Corp. et al.</u>, Civ. No. 1:11-CV-00539-JBS-KW (D. Del.; filed June 16, 2011) ("Gore Delaware DJ Action").  This declaration is made on my own personal knowledge, except as otherwise indicated.

    2.    The Complaint filed in the Minnesota Action charges Gore with infringing various claims of AGA Medical's  U.S. Patent No. 5,944,738 ("the '738 patent") in connection with, inter alia, making, using and selling "occluder products, including without limitation the Gore HELEX® occluder."  Minnesota Action Complaint (Doc. 1)

¶ 8.  For the Court's convenience, a true and correct copy of the Minnesota Action Complaint is attached hereto as Exhibit 1.

3. As of January 15, 2011, Gore had not yet produced any discovery, Gore's HELEX® occluder was the only commercially available Gore occluder of which AGA was aware, and AGA identified that product in its preliminary claim infringement chart.

4. A true and correct copy of the original Pretrial Scheduling Order issued in the Minnesota Action (Doc. 18) is attached hereto as Exhibit 2.

5. A true and correct copy of the First Amended Pretrial Scheduling Order issued in the Minnesota Action (Doc. 37) is attached hereto as Exhibit 3.

6. A true and correct copy of the Second Amended Pretrial Scheduling Order issued in the Minnesota Action (Doc. 42) is attached hereto as Exhibit 4.

7. A true and correct copy of the Third Amended Pretrial Scheduling Order issued in the Minnesota Action (Doc. 44) is attached hereto as Exhibit 5.

8. In Plaintiff's January 18, 2011 Preliminary Claim Chart served in the Minnesota Action, AGA Medical identified Gore's HELEX® occluder as a device that was covered by one or more claims of the '718 patent (literally and/or under the doctrine of equivalents).

9. On March 22, 2011, AGA served its First Notice of 30(b)(6) Deposition of Gore, seeking a deposition in Minnesota on April 12, 2011, that would be focused largely on the HELEX® occluder and testimony tailored to completing AGA's Final Claim Chart.  A true and correct copy of that deposition notice is attached hereto as Exhibit 6.

10. On April 7, 2011, I became aware that a Gore septal occluder other than the HELEX® occluder had been mentioned at the 8th International Workshop on Interventional Pediatric Cardiology ("IPC") in Milan, Italy. I saw one cell phone photograph of a slide supposedly depicting that product. A true and correct copy of that photograph is attached to the Declaration of Jonathan Brenner as Exhibit 2. Although difficult to read, the slide appears to be titled "5 Wire Occluder Frame designed for optimal closure."

11. That same date, I sent an email to Gore's litigation counsel in the Minnesota Action (who also is identified as Gore's litigation counsel on Gore's Delaware DJ Complaint), asking him to call me and discuss the production of documents by Gore that would disclose the structure and operation of that non-HELEX® occluder.

12. That same date, Gore's litigation counsel and I filed a Joint Stipulation in the Minnesota Action, extending the deadline for AGA to file its final claim chart identifying all Gore products that infringe the '798 patent until May 15, 2011. A true and correct copy of the Joint Stipulation for Extension (Doc. No. 36) is attached hereto as Exhibit 7.

13. The next day, on Friday, April 8, 2011, Gore's litigation counsel informed me that Gore "would be happy to consider appropriate, formal document requests" relating to the non-HELEX® occluder.

14. A true and correct copy of the April 7 and April 8, 2011, email chain between me and Gore's litigation counsel is attached hereto as Exhibit 8.

15.     The following Monday, April 11, 2011, AGA propounded formal discovery requests to Gore concerning the non-HELEX® occluder.  A true and correct copy of such discovery requests (Document Request Nos. 30-33) are attached hereto as Exhibit 9.

16.     On April 20, 2011, litigation counsel for Gore and AGA (including me) attended a status conference in the Minnesota Action with United States Magistrate Judge Janie Mayeron.  Topics discussed during the status conference included without limitation (i) when Gore would produce its Rule 30(b)(6) designee(s) for deposition, (ii) how many days thereafter AGA's final claim chart would be due, (iii) the fact that AGA had propounded discovery on the non-HELEX® occluder and that such occluder might have an impact on AGA's final claim chart, and (iv) whether status conferences with the Court should be conducted monthly instead of every-other-month as provided in the Pretrial Scheduling Order so that the parties and Court would meet again in May 2011.  I also specifically informed Gore's counsel at the status conference that the non-HELEX® occluder subject to AGA's discovery requests was the occluder presented at the IPC in Milan, Italy.  At no time during the status conference did Gore's counsel suggest that it would refuse to provide discovery on the non-HELEX® occluder.  Nor did Gore's counsel indicate that Gore was less than two months away from launching that product in Europe.  Both parties said "no" to monthly status conferences.

17.     After the status conference, I informed Gore's counsel on multiple occasions that the non-HELEX® occluder April 2011 discovery requests were focused on the occluder that was discussed at the IPC in Milan, Italy. A true and correct copy of one of those communications—an April 28, 2011 email—is attached hereto as Exhibit 10.

4

18. After the status conference, I also called Gore's counsel on the telephone and asked Gore to respond to the 5-wire-occluder related discovery requests before the end of the 30-day response period provided for in the Rules, or to at least let me know whether Gore intended to give substantive responses. Gore's counsel told me that I would have to wait to find out and that Gore would wait until the end of the 30-day period to serve its responses.

19. On May 6, 2011, approximately eleven days before the Rule 30(b)(6) deposition was scheduled to commence, AGA served an amended notice of deposition, specifically adding the non-HELEX® occluder as a deposition topic (Topic 16). A true and correct copy of the amended deposition notice is attached hereto as Exhibit 11.

20. At 5:14pm CDT on May 11, 2011, I received, via e-mail, Gore's formal responses to AGA's pending discovery requests directed to Gore's non-HELEX® occluder. Gore's counsel objected to providing any discovery on the non-HELEX® occluder. A true and correct copy of those discovery responses is attached hereto as Exhibit 12.

21. During a meet-and-confer between counsel on May 12, 2011, Gore's counsel reiterated its position that it would not provide any discovery on the non-HELEX® occluder that was discussed at the IPC in Milan, Italy. I told Gore's counsel that neither AGA nor AGA's counsel had adequate information about the device to determine its structure or whether it infringed or might infringe the '738 patent. I also asked Gore's counsel whether if AGA did not pursue such discovery and did not include the non-HELEX® device in its final claim chart Gore then (i) would Gore take the

position that AGA would be barred by laches or waiver from ever asserting the '738 patent against the non-HELEX® device in the future in the event that AGA, after learning details about that device as they became available in the commercial market, decided that it did infringe the '738 patent or (2) instead, would agree that Gore would not rely on waiver or laches as a defense in any future litigation in such instance because Gore had refused to provide any discovery on that product in the Minnesota Action.  I also asked Gore's counsel whether he disagreed with my belief that if AGA, upon inspection and evaluation, believed that the non-HELEX® device infringed the '738 patent then it made sense to have that device included in the Minnesota Action.  Gore's counsel did not disagree.

22.    During a subsequent meet-and-confer between counsel, Gore's litigation counsel asserted that Gore would not provide any discovery on the non-HELEX® device in the Minnesota Action and would not agree to not rely on waiver or laches as a defenses in any future litigation that might be brought asserting the '738 patent against the non-HELEX® device.  The parties agreed that the question of discovery on the non-HELEX® device would be an issue (among many issues between the parties) that would be addressed by way of a motion to compel.

23.    On May 16, 2011, Gore objected to producing any Rule 30(b)(6) designee on the topic associated with Gore's non-HELEX® occluder.  A true and correct copy of Gore's objections and responses is attached hereto as Exhibit 16.

24. Over the course of several meetings and conferences Gore maintained its refusal to produce any discovery or witnesses on the non- HELEX® occluder. Gore said this would have to be an issue for a motion to compel.

25. Magistrate Judge Mayeron originally scheduled a motion-to-compel hearing date—with the parties' consent and input—for June 29, 2011.

26. On June 14, 2011, Magistrate Judge Mayeron rescheduled the motion-to-compel hearing date for July 19, 2011.

27. Two days later, on June 16, 2011, Gore (and Gore's litigation counsel in the Minnesota Action) filed the Delaware DJ Action against AGA Medical and AGA Medical Holdings. The Delaware DJ Action pleads (as in the Minnesota Action) that AGA's '738 patent is invalid and unenforceable, and also that the Gore non-HELEX® occluder—which Gore has refused to provide any information or discovery on in the Minnesota Action—does not infringe either AGA's '738 patent or AGA's '552 patent. Gore did not serve the Delaware DJ Action Complaint on AGA's undersigned counsel or otherwise inform AGA's counsel about such complaint. A true and correct copy of Gore's Delaware DJ Action Complaint is attached hereto as Exhibit 13.

28. AGA has never asserted the '552 patent in a patent infringement action. Nor has AGA ever charged anyone with infringement of the '552 patent.

29. Neither I nor anyone at my firm has seen the Gore non-HELEX® occluder that apparently was the subject of the presentation on April 1, 2011, in Milan, Italy, and is the subject of Gore's Delaware DJ Action.

30. Neither I nor anyone at my firm attended the IPC in Milan, Italy, or saw the presentation allegedly made by Dr. M. Carminati (referenced in paragraph 27 of Gore's Delaware DJ Action Complaint) concerning the Gore non-HELEX® occluder.

31. I have repeatedly asked Gore's counsel—both informally and by way of formal discovery in the Minnesota Action—for information concerning the Gore non-HELEX® occluder sufficient to ascertain the structure of such device and whether it does or might infringe the '738 patent but have never received any such information.

32. Neither I nor anyone at my firm has taken the position that Gore's non-HELEX® occluder that was the subject of the IPC presentation and Gore's Delaware DJ Action infringes any AGA patents.

33. Gore first produced discovery on February 4, 2011. A true and correct copy of the February 4, 2011 letter from Gore's counsel enclosing Gore's production of WLG00000001 – WLG00246630 is attached hereto as Exhibit 14.

34. A true and correct copy of <u>Acumed LLC v. Stryker Corp.</u>, Civ. No. 06-CV-642-BR, 2006 U.S. Dist. LEXIS 81932 (D. Or. Nov. 6, 2006) is attached hereto as Exhibit 15.

35. AGA will be filing a motion to dismiss or transfer the Delaware DJ Action.

36. Gore has asked to "claw back" pages "WLG00091846-56" from Gore's production.

I state under penalty of perjury that the foregoing is true and correct.

Dated: July 1, 2011                                *s/ Dennis C. Bremer*
                                                  Dennis C. Bremer