## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| AGA Medical Corp., | **No. 0:10-cv-03734-JNE-JSM** |
| Plaintiff, | |
| | **GORE'S RESPONSES AND OBJECTIONS TO AGA'S FIRST AMENDED NOTICE OF 30(B)(6) DEPOSITION (TOPIC NOS. 1-16)** |
| v. | |
| W. L. Gore & Associates, Inc., | |
| Defendant. | |

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendant W. L. Gore & Associates, Inc. ("Gore") hereby responds and objects to Plaintiff AGA Medical Corp.'s ("AGA") First Notice of Rule 30(b)(6) Subject Deposition, dated March 22, 2011 ("First Notice") and AGA's First Amended Notice of Rule 30(b)(6) Subject Deposition, dated May 6, 2011 ("First Amended Notice"), as follows.

### RESERVATION OF RIGHTS AND GENERAL OBJECTIONS

1.      Gore's objections and responses are based on Gore's current knowledge, information, and reasonable beliefs.  Gore has not completed its investigation into the facts and circumstances pertaining to this lawsuit or its preparation for trial.  Gore therefore reserves the right to modify, alter, amend, supplement these objections and responses based on any information that is learned or discovered subsequently, or to present additional evidence in any filing or proceeding including, but not limited to, at trial.

2.      Gore objects generally to the First Notice and the First Amended Notice as

**EXHIBIT 16**

unduly burdensome, oppressive, and propounded solely for the purposes of harassment or to cause Gore to incur unnecessary litigation expense, because it instructs that the deposition will "continue from day to day until completed."  Gore will provide its Rule 30(b)(6) witness(es) to testify, subject to Gore's objections, at a mutually agreeable date, time and location.  Each day of Rule 30(b)(6) deposition shall last no more than seven (7) hours, up to a total of twenty-one (21) hours of Rule 30(b)(6) deposition of Gore. Gore may consider scheduling additional time for further questions if appropriate.

3.      Gore objects generally to each definition, instruction and Deposition Subject to the extent they purport to impose any requirement or obligation on Gore greater than or different from those imposed by the Federal Rules of Civil Procedure, or any other applicable rules and orders of the Court.

4.      Gore objects generally to AGA's definition of "GORE® HELEX Septal Occluder" as overly broad and unduly burdensome to the extent it includes products other than those which AGA has accused of infringement or to the extent it includes "predecessor designs or design variations of the GORE® HELEX Septal Occluder."  The burden of producing a witness to testify on such matters outweighs the limited materiality or relevance of the additional information that is requested.  Gore's designee(s) will not testify about products other than the GORE® HELEX Septal Occluder.

5.      Gore objects generally to AGA's definition of "Gore Five Wire Occluder Device" as overly broad, unduly burdensome and encompassing information that is neither relevant to any party's claims or defenses nor reasonably calculated to lead to the discovery of admissible evidence, or which exceeds the scope of discovery permitted by

2

the Federal Rules of Civil Procedure to the extent it includes products other than those
which AGA has accused of infringement.  Gore's designee(s) will not testify about
products other than the GORE® HELEX Septal Occluder.

      6.    Gore objects generally to each Deposition Subject within the First Notice
and the First Amended Notice to the extent it purports to require Gore to prepare and to
produce witnesses to testify as to topics protected from discovery by any applicable
privilege, protection, or immunity, including without limitation the attorney-client
privilege and the work product doctrine.  Gore will not disclose any information
protected by such privileges or protections.  Inadvertent disclosures of any privileged
communications or work product shall not constitute a waiver of the privilege or
protection or of any other basis for objection to discovery of such information.

      7.    Gore objects generally to each Deposition Subject within the First Notice
and the First Amended Notice to the extent it seeks work product, mental impressions,
conclusions, opinions, or legal theories of Gore's counsel, experts, and/or consultants
developed in connection with or in anticipation of this or other litigation or other business
transactions not related to this litigation.

      8.    Gore objects generally to each Deposition Subject within the First Notice
and the First Amended Notice because the Deposition Subjects are not described with
"reasonable particularity" as required by Rule 30(b)(6) of the Federal Rules of Civil
Procedure.  The vague and general description of the matters to be examined inhibits
Gore's ability to prepare for the deposition.

      9.    Gore objects generally to each Deposition Subject within the First Notice

and the First Amended Notice to the extent it seeks information that is neither relevant to

any party's claims or defenses nor reasonably calculated to lead to the discovery of

admissible evidence, or which exceeds the scope of discovery permitted by the Federal

Rules of Civil Procedure.  Pursuing such information is wasteful and unnecessary and is

counter to AGA's complaints about wanting to streamline discovery.

10.     Gore objects generally to each Deposition Subject within the First Notice

and the First Amended Notice as overly broad and unduly burdensome to the extent it

seeks to obtain information that does not exist, is beyond matters known or reasonably

available to Gore, or is beyond what Gore has ascertained or determined.

11.     Gore objects generally to each Deposition Subject within the First Notice

and the First Amended Notice as unduly burdensome, oppressive, duplicative, and

propounded solely for the purposes of harassment, and to cause Gore to incur

unnecessary litigation expense to the extent the Deposition Subjects are duplicative of

other discovery that has been, or is in the process of being, provided to AGA.  Further

interrogatories, document requests, and requests for admissions would have been more

effective, less expensive, and less burdensome mechanisms of discovery.

12.     Gore objects generally to each Deposition Subject within the First Notice

and the First Amended Notice to the extent it contains any factual or legal

misrepresentations or assumptions.  Any statement made of an intent to produce a witness

is not, and shall not be deemed an admission of any factual or legal contention contained

in any individual Deposition Subject.

13.     Gore objects generally to each Deposition Subject within the First Notice

and the First Amended Notice to the extent it calls for a legal conclusion or seeks expert testimony.

14.     Gore objects generally to each Deposition Subject within the First Notice and the First Amended Notice to the extent it seeks information containing trade secret, proprietary information, or other confidential or competitively sensitive business information.  To the extent it is relevant, such information will only be provided subject to the Protective Order in this case.  Gore hereby designates its 30(b)(6) testimony as "Confidential—Outside Attorneys' Eyes Only," subject to re-designation at the depositions themselves or after review of the transcripts.

15.     Gore's reservation of rights and general objections are hereby incorporated into Gore's specific objections and responses below.  To the extent any of the general objections are cited in a specific response, those citations are provided because they are believed to be particularly applicable to the specific requests and are not to be construed as a waiver of any other General Objection.

16.     Nothing in Gore's responses should be construed as a waiver of any of Gore's rights or objections which otherwise might be available to Gore, nor should Gore's responses be deemed an admission of relevancy, materiality or admissibility into evidence of the Deposition Subject or responses thereto.

17.     Subject to the General Objections and to the Specific Responses and Objections, as set forth herein, Gore shall identify and produce one or more witnesses on May 17, 2011 in Flagstaff, Arizona as agreed to between the parties and pursuant to the Court's April 20, 2011 Order to testify about the Deposition Subjects set forth in the First

Notice and the First Amended Notice that are relevant and not privileged, to the extent it can understand the Deposition Subjects, to the extent the Deposition Subjects are not cumulative or unduly burdensome, and to the extent responsive information is within Gore's possession, custody, or control.

## SPECIFIC RESPONSES AND OBJECTIONS

### TOPIC NO. 1:

1.      The structure, function and operation of the GORE® HELEX Septal Occluder prior to implantation, during implantation, and after implantation.

### RESPONSE:

Gore objects specifically to Deposition Subject No. 1 of the First Notice and the First Amended Notice as overly broad, vague, and ambiguous in its use of the undefined terms "structure," "function," "operation," "prior to implantation," "during implantation," and "after implantation."  Gore also objects to this Deposition Subject as overly broad and unduly burdensome to the extent it seeks information that AGA can obtain for itself from the previously produced accused HELEX Septal Occluder devices, and the vague and general description of the matters to be examined inhibits Gore's ability to prepare for the deposition.  Gore also objects to this Deposition Subject as overly broad and unduly burdensome to the extent it seeks to obtain information "during implantation, and after implantation" that does not exist, is beyond matters known or reasonably available to Gore, or is beyond what Gore has ascertained or determined.  Gore further objects to this Deposition Subject to the extent it calls for a legal conclusion or seeks expert testimony, for example, regarding the "function … of the GORE® HELEX Septal

Occluder."

Subject to Gore's general and specific objections, Gore will produce witness(es) to

provide general testimony regarding the design of GORE® HELEX Septal Occluder as

manufactured for sale by Gore and the intended usage of the device according to the

FDA-approved Instructions for Use.

**TOPIC NO. 2:**

2.       The function and operation of the lock loop and eyelets of the GORE®
HELEX Septal Occluder, including the interaction between the lock loop and eyelets
prior to implantation, during implantation, and after implantation of the GORE® HELEX
Septal Occluder.

**RESPONSE:**

Gore objects specifically to Deposition Subject No. 2 of the First Notice and the

First Amended Notice as overly broad, vague, and ambiguous in its use of the undefined

terms "function," "operation," "lock loop," "eyelets," "interaction between," "prior to

implantation," "during implantation," and "after implantation."  Gore also objects to this

Deposition Subject as duplicative to the extent it seeks information already sought by

Deposition Subject No. 1.  Gore also objects to this Deposition Subject to the extent it

seeks to obtain information "during implantation, and after implantation," that does not

exist, is beyond matters known or reasonably available to Gore, or is beyond what Gore

has ascertained or determined.  Gore further objects to this Deposition Subject to the

extent it calls for a legal conclusion or seeks expert testimony, for example, regarding the

"function … of the lock loop and eyelets of the GORE® HELEX Septal Occluder."

Subject to Gore's general and specific objections, Gore will produce witness(es) to

7

provide general testimony regarding what Gore regards as the lock loop and the eyelets of

the GORE® HELEX Septal Occluder as manufactured for sale by Gore and the intended

usage of the device according to the FDA-approved Instructions for Use.

**TOPIC NO. 3:**

3.      The function and operation of the lock loop and the mandrel of the GORE®
HELEX Septal Occluder, including the interaction between the lock loop and mandrel
prior to implantation, during implantation, and after implantation of the GORE® HELEX
Septal Occluder.

**RESPONSE:**

Gore objects specifically to Deposition Subject No. 3 of the First Notice and the

First Amended Notice as overly broad, vague, and ambiguous in its use of the undefined

terms "function," "operation," "lock loop," "mandrel," "interaction between," "prior to

implantation," "during implantation" and "after implantation."  Gore also objects to this

Deposition Subject as duplicative to the extent it seeks information already sought by

Deposition Subject No. 1.  Gore also objects to this Deposition Subject to the extent it

seeks to obtain information "during implantation, and after implantation" that does not

exist, is beyond matters known or reasonably available to Gore, or is beyond what Gore

has ascertained or determined.  Gore further objects to this Deposition Subject to the

extent it calls for a legal conclusion or seeks expert testimony, for example, regarding the

"function … of the lock loop and the mandrel of the GORE® HELEX Septal Occluder."

Subject to Gore's general and specific objections, Gore will produce witness(es) to

provide general testimony regarding what Gore regards as the lock loop and the mandrel

of the GORE® HELEX Septal Occluder as manufactured for sale by Gore and the

intended usage of the device according to the FDA-approved Instructions for Use.

**TOPIC NO. 4:**

4.      The function and operation of the eyelets and the mandrel of the GORE® HELEX Septal Occluder, including the interaction between the eyelets and mandrel prior to implantation, during implantation, and after implantation of the GORE® HELEX Septal Occluder.

**RESPONSE:**

Gore objects specifically to Deposition Subject No. 4 of the First Notice and the First Amended Notice as overly broad, vague, and ambiguous in its use of the undefined terms "function," "operation," "eyelets," "mandrel," "interaction between," "prior to implantation," "during implantation," and "after implantation."  Gore also objects to this Deposition Subject as duplicative to the extent it seeks information already sought by Deposition Subject No. 1.  Gore also objects to this Deposition Subject to the extent it seeks to obtain information "during implantation, and after implantation" that does not exist, is beyond matters known or reasonably available to Gore, or is beyond what Gore has ascertained or determined.  Gore further objects to this Deposition Subject to the extent it calls for a legal conclusion or seeks expert testimony, for example, regarding the "function … of the eyelets and the mandrel of the GORE® HELEX Septal Occluder."

Subject to Gore's general and specific objections, Gore will produce witness(es) to provide general testimony regarding what Gore regards as the eyelets and the mandrel of the GORE® HELEX Septal Occluder as manufactured for sale by Gore and the intended usage of the device according to the FDA-approved Instructions for Use.

**TOPIC NO. 5:**

5.      The dimensions and tolerances of the nitinol wire, the eyelets, the lock loop and the mandrel of the GORE® HELEX Septal Occluder.

**RESPONSE:**

Gore objects specifically to Deposition Subject No. 5 of the First Notice and the First Amended Notice as overly broad, vague, and ambiguous in its use of the undefined terms "tolerances," "nitinol wire," "eyelets," "lock loop" and "mandrel." Gore also objects to this Deposition Subject as duplicative to the extent it seeks information already sought by Deposition Subject No. 1.  Gore also objects to this Deposition Subject as unduly burdensome because the discovery tool AGA has chosen is the most expensive and burdensome tool available considering the type of information that is being sought and requests for documents are the appropriate tool for this type of information.  Gore further objects to this Deposition Subject to the extent it calls for a legal conclusion or seeks expert testimony.

Subject to Gore's general and specific objections, Gore will produce witness(es) to provide general testimony regarding the manufacturing specifications for the GORE® HELEX Septal Occluder as manufactured for sale by Gore.

**TOPIC NO. 6:**

6.      All analyses performed by Gore or on Gore's behalf of boundary conditions on the GORE® HELEX Septal Occluder, including but not limited to literature analyses of the same.

**RESPONSE:**

10

Gore objects specifically to Deposition Subject No. 6 of the First Notice and the First Amended Notice as overly broad and unduly burdensome to the extent it calls for "all" analyses when a smaller subset of information is sufficient to provide the substance of the information sought and the burden of producing a witness to testify to all analyses outweighs the limited materiality or relevance of the additional information that is requested.  Gore objects to this Deposition Subject as overly broad, vague, and ambiguous in its use of the undefined terms "analyses," "boundary conditions" and "literature analyses of the same."  Gore further objects to this Deposition Subject to the extent it calls for a legal conclusion or seeks expert testimony, for example, regarding "boundary conditions."

Subject to Gore's general and specific objections, Gore will produce witness(es) to provide general testimony identifying boundary conditions assumed in modeling of the GORE® HELEX Septal Occluder submitted by Gore to the U.S. Food & Drug Administration or related thereto.

**TOPIC NO. 7:**

7.    All analyses performed by Gore or on Gore's behalf of stress or strain in the nitinol frame of the GORE® HELEX Septal Occluder under pre-implantation and *in vivo* loading conditions.

**RESPONSE:**

Gore objects specifically to Deposition Subject No. 7 of the First Notice and the First Amended Notice as overly broad and unduly burdensome to the extent it calls for "all" analyses when a smaller subset of information is sufficient to provide the substance

11

of the information sought and the burden of producing a witness to testify to all analyses

outweighs the limited materiality or relevance of the additional information that is

requested.  Gore also objects to this Deposition Subject as overly broad, vague, and

ambiguous in its use of the undefined terms "analyses," "stress," "strain," "nitinol

frame," and "pre-implantation and *in vivo* loading conditions."  Gore further objects to

this Deposition Subject to the extent it calls for a legal conclusion or seeks expert

testimony, for example, regarding "stress or strain in the nitinol frame of the GORE®

HELEX Septal Occluder."

Subject to Gore's general and specific objections, Gore will produce witness(es) to

provide general testimony identifying stress or strain values assumed or calculated in

modeling of the nitinol wire of the GORE® HELEX Septal Occluder submitted by Gore

to the U.S. Food & Drug Administration or related thereto.

**TOPIC NO. 8:**

8.      All analyses performed by Gore or on Gore's behalf of stress or strain in
the latch and/or lock loop of the GORE® HELEX Septal Occluder under pre-
implantation and *in vivo* loading conditions.

**RESPONSE:**

Gore objects specifically to Deposition Subject No. 8 of the First Notice and the

First Amended Notice as overly broad and unduly burdensome to the extent it calls for

"all" analyses when a smaller subset of information is sufficient to provide the substance

of the information sought and the burden of producing a witness to testify to all analyses

outweighs the limited materiality or relevance of the additional information that is

requested.  Gore also objects to this Deposition Subject as overly broad, vague, and

ambiguous in its use of the undefined terms "analyses," "stress," "strain," "latch," "lock

loop," and "pre-implantation and *in vivo* loading conditions."  Gore also objects to this

Deposition Subject as duplicative to the extent it seeks information already sought by

Deposition Subject No. 7.  Gore further objects to this Deposition Subject to the extent it

calls for a legal conclusion or seeks expert testimony, for example, regarding the "stress

or strain in the latch and/or lock loop of the GORE® HELEX Septal Occluder."

Subject to Gore's general and specific objections, Gore will produce witness(es) to

provide general testimony identifying stress or strain values assumed or calculated in

modeling of what Gore regards as the latch or lock loop of the GORE® HELEX Septal

Occluder submitted by Gore to the U.S. Food & Drug Administration or related thereto.


**TOPIC NO. 9:**

9.      All analyses performed by Gore or on Gore's behalf of the structure and
performance of the nitinol frame of the GORE® HELEX Septal Occluder under pre-
implantation and *in vivo* loading conditions, including but not limited to resulting
deformations.

**RESPONSE:**

Gore objects specifically to Deposition Subject No. 9 of the First Notice and the

First Amended Notice as overly broad and unduly burdensome to the extent it calls for

"all" analyses when a smaller subset of information is sufficient to provide the substance

of the information sought and the burden of producing a witness to testify to all analyses

outweighs the limited materiality or relevance of the additional information that is

requested.  Gore also objects to this Deposition Subject as overly broad, vague, and

ambiguous in its use of the undefined terms "analyses," "structure," "performance,"

"nitinol frame," "pre-implantation and *in vivo* loading conditions," and "resulting

deformations."  Gore also objects to this Deposition Subject as duplicative to the extent it

seeks information already sought by Deposition Subject Nos. 1, 7 and 8.  Gore further

objects to this Deposition Subject to the extent it calls for a legal conclusion or seeks

expert testimony, for example, regarding the "performance of the nitinol frame of the

GORE® HELEX Septal Occluder."

Subject to Gore's general and specific objections, Gore will produce witness(es) to

provide general testimony regarding Gore's testing of the nitinol wire of the GORE®

HELEX Septal Occluder as manufactured for sale by Gore and testing of the nitinol wire

submitted by Gore to the U.S. Food & Drug Administration, or related thereto, as well as

the intended usage of the device according to the FDA-approved Instructions for Use.

**TOPIC NO. 10:**

10.     All analyses performed by Gore or on Gore's behalf of the structure and
performance of the latch and/or lock loop of the GORE® HELEX Septal Occluder under
pre-implantation and *in vivo* loading conditions, including but not limited to resulting
deformations.

**RESPONSE:**

Gore objects specifically to Deposition Subject No. 10 of the First Notice and the

First Amended Notice as overly broad and unduly burdensome to the extent it calls for

"all" analyses when a smaller subset of information is sufficient to provide the substance

14

of the information sought and the burden of producing a witness to testify to all analyses

outweighs the limited materiality or relevance of the additional information that is

requested.  Gore also objects to this Deposition Subject as overly broad, vague, and

ambiguous in its use of the undefined terms "analyses," "structure," "performance,"

"latch," "lock loop," "pre-implantation and *in vivo* loading conditions," and "resulting

deformations."  Gore also objects to this Deposition Subject as duplicative to the extent it

seeks information already sought by Deposition Subject Nos. 1, 7-9.  Gore further objects

to this Deposition Subject to the extent it calls for a legal conclusion or seeks expert

testimony, for example, regarding the "performance of the latch and/or lock loop of the

GORE® HELEX Septal Occluder."

      Subject to Gore's general and specific objections, Gore will produce witness(es) to

provide general testimony regarding Gore's testing on what Gore regards as the latch or

lock loop of the GORE® HELEX Septal Occluder as manufactured for sale by Gore and

submitted to the U.S. Food & Drug Administration, as well as the intended usage of the

device according to the FDA-approved Instructions for Use.

### TOPIC NO. 11:

      11.    All analyses performed by Gore or on Gore's behalf of the structure and
performance of the eyelets of the GORE® HELEX Septal Occluder under implantation
and *in vivo* loading conditions, including but not limited to resulting deformations.

### RESPONSE:

      Gore objects specifically to Deposition Subject No. 11 of the First Notice and the

First Amended Notice as overly broad and unduly burdensome to the extent it calls for

15

"all" analyses when a smaller subset of information is sufficient to provide the substance

of the information sought and the burden of producing a witness to testify to all analyses

outweighs the limited materiality or relevance of the additional information that is

requested. Gore also objects to this Deposition Subject as overly broad, vague, and

ambiguous in its use of the undefined terms "analyses," "structure," "performance,"

"eyelets," "implantation and *in vivo* loading conditions," and "resulting deformations."

Gore also objects to this Deposition Subject as duplicative to the extent it seeks

information already sought by Deposition Subject Nos. 1, 2, 4, 5, and 7-10. Gore further

objects to this Deposition Subject to the extent it calls for a legal conclusion or seeks

expert testimony, for example, regarding the "performance of the eyelets of the GORE®

HELEX Septal Occluder."

Subject to Gore's general and specific objections, Gore will produce witness(es) to

provide general testimony regarding Gore's testing on what Gore regards as the eyelets of

the GORE® HELEX Septal Occluder as manufactured for sale by Gore and testing of the

eyelets submitted by Gore to the U.S. Food & Drug Administration, as well as the

intended usage of the device according to the FDA-approved Instructions for Use.


**TOPIC NO. 12:**

12. All analyses performed by Gore or on Gore's behalf of the structure and
performance of the mandrel of GORE® HELEX Septal Occluder devices before and
during implantation of the GORE® HELEX Septal Occluder, including but not limited to
resulting deformations.

**RESPONSE:**

Gore objects specifically to Deposition Subject No. 12 of the First Notice and the First Amended Notice as overly broad and unduly burdensome to the extent it calls for "all" analyses when a smaller subset of information is sufficient to provide the substance of the information sought and the burden of producing a witness to testify to all analyses outweighs the limited materiality or relevance of the additional information that is requested.  Gore also objects to this Deposition Subject as overly broad, vague, and ambiguous in its use of the undefined terms "analyses," "structure," "performance," "mandrel," "before and during implantation," and "resulting deformations." Gore also objects to this Deposition Subject as duplicative to the extent it seeks information already sought by Deposition Subject Nos. 1 and 3-5.   Gore further objects to this Deposition Subject to the extent it calls for a legal conclusion or seeks expert testimony, for example, regarding the "performance of the mandrel of GORE® HELEX Septal Occluder."

Subject to Gore's general and specific objections, Gore will produce witness(es) to provide general testimony regarding Gore's testing on what Gore regards as the mandrel of the GORE® HELEX Septal Occluder as manufactured for sale by Gore and testing of the mandrel submitted by Gore to the U.S. Food & Drug Administration, as well as the intended usage of the device according to the FDA-approved Instructions for Use.


**TOPIC NO. 13:**

13.     All examinations, analyses and reviews of images of implanted GORE® HELEX Septal Occluder devices, including but not limited to fluoroscopic images.

**RESPONSE:**

Gore objects specifically to Deposition Subject No. 13 of the First Notice and the First Amended Notice as overly broad and unduly burdensome to the extent it calls for "all" analyses when a smaller subset of information is sufficient to provide the substance of the information sought and the burden of producing a witness to testify to all analyses outweighs the limited materiality or relevance of the additional information that is requested.  Gore also objects to this Deposition Subject as overly broad, vague, and ambiguous in its use of the undefined term "examinations," "analyses," "reviews of images," "implanted" and "fluoroscopic images."  Gore also objects to this Deposition Subject to the extent it seeks to obtain information "examinations, analyses and reviews of images of implanted GORE® HELEX Septal Occluder devices" that does not exist, is beyond matters known or reasonably available to Gore, or is beyond what Gore has ascertained or determined.  Gore further objects to this Deposition Subject to the extent it calls for a legal conclusion or seeks expert testimony, for example, regarding the "images of implanted GORE® HELEX Septal Occluder devices."

Subject to Gore's general and specific objections, Gore will produce witness(es) to provide general testimony regarding analysis of fluoroscopic and echocardiographic images of the GORE® HELEX Septal Occluder in clinical trials.


**TOPIC NO. 14:**

14.     Gore's document retention policies from 1996 to present, and any records relating to Gore's compliance or non-compliance with those policies.

**RESPONSE:**

Gore objects specifically to Deposition Subject No. 14 of the First Notice and the

First Amended Notice to the extent it seeks to obtain information protected from

discovery by any applicable privilege, protection, or immunity, including without

limitation the attorney-client privilege and the work product doctrine.  Gore will not

disclose any information protected by such privileges or protections.  Inadvertent

disclosures of any privileged communications or work product shall not constitute a

waiver of the privilege or protection or of any other basis for objection to discovery of

such information.  Gore also objects to this Deposition Subject as overly broad, vague,

and ambiguous in its use of the undefined terms "document retention policies," "records,"

"compliance" and "non-compliance."  Gore also objects to this Deposition Subject to the

extent it seeks information prior to August 24, 2010 (the date that AGA served the

Complaint on Gore) and to the extent it embraces policies applicable to products other

than the accused GORE® HELEX Septal Occluder because that information is neither

relevant to any party's claims or defenses nor reasonably calculated to lead to the

discovery of admissible evidence, or which exceeds the scope of discovery permitted by

the Federal Rules of Civil Procedure.  Gore also objects specifically to this Deposition

Subject as overly broad and unduly burdensome to the extent it calls for "any" records

when a smaller subset of information is sufficient to provide the substance of the

information sought and the burden of producing a witness to testify to all analyses

outweighs the limited materiality or relevance of the additional information that is

requested.  Gore further objects to this Deposition Subject as unduly burdensome because

the discovery tool AGA has chosen is the most expensive and burdensome tool available

considering the type of information that is being sought and requests for documents are the appropriate tool for this type of information.

Subject to Gore's general and specific objections, Gore will produce witness(es) to provide general testimony regarding document retention policies applicable to documents relating to the Gore® HELEX Septal Occluder on or after August 24, 2010 (the date that AGA served the Complaint on Gore).


**TOPIC NO. 15:**

15.    Gore's efforts to locate and produce documents responsive to AGA's First Set of Requests for Production of Documents.

**RESPONSE:**

Gore objects specifically to Deposition Subject No. 15 of the First Notice and the First Amended Notice to the extent it seeks to obtain information protected from discovery by any applicable privilege, protection, or immunity, including without limitation the attorney-client privilege and the work product doctrine.  Gore will not disclose any information protected by such privileges or protections.  Inadvertent disclosures of any privileged communications or work product shall not constitute a waiver of the privilege or protection or of any other basis for objection to discovery of such information.  Gore also objects to this Deposition Subject as overly broad, vague, and ambiguous in its use of the undefined term "efforts."  Gore also objects to this Deposition Subject as premature as Gore is still locating, collecting and reviewing documents responsive to AGA's First Set of Requests for Production of Documents.

Gore will not produce a witness for this topic at this time.

**TOPIC NO. 16:**

16.    The structure, function and operation of the Gore Five Wire Occluder Device prior to implantation, during implantation, and after implantation.

**RESPONSE:**

Gore objects specifically to Deposition Subject No. 16 of the First Amended Notice as overly broad, vague, and ambiguous in its use of the undefined terms "structure," "function," "operation," "prior to implantation," "during implantation," and "after implantation."  Gore also objects to this Deposition Subject as overly broad and unduly burdensome to the extent it seeks to obtain information "during implantation, and after implantation" that does not exist, is beyond matters known or reasonably available to Gore, or is beyond what Gore has ascertained or determined.  Gore further objects to this Deposition Subject to the extent it calls for a legal conclusion or seeks expert testimony, for example, regarding the "function … of the Gore Five Wire Occluder Device." Gore further objects to this Deposition Subject as overly broad, unduly burdensome and as encompassing information that is neither relevant to any party's claims or defenses nor reasonably calculated to lead to the discovery of admissible evidence, or which exceeds the scope of discovery permitted by the Federal Rules of Civil Procedure to the extent it includes products other than those which AGA has accused of infringement.  Gore will not produce a witness to testify about products other than the GORE® HELEX Septal Occluder.

Dated:  May 16, 2011                      **W.L. GORE & ASSOCIATES, INC.**


/s/ Matthew K. Blackburn
Matthew K. Blackburn (CA #261959)
LOCKE LORD BISSELL & LIDDELL LLP
44 Montgomery Street
Suite 2400
San Francisco, CA  94104
Phone: (415) 318-8810
Fax: (415) 676-5816
E-mail: mblackburn@lockelord.com

John F. Sweeney (NY #1394568)
Andrea L. Wayda (NY #2524932)
Steven M. Purdy (NY #4406823)
LOCKE LORD BISSELL & LIDDELL LLP
Three World Financial Center
New York, New York  10281-2101
Phone: (212) 415-8600
Fax: (212) 303-2754
Email: jsweeney@lockelord.com

Myoka Kim Goodin (CA #229073)
Patrick Gallagher (IL #6294674)
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, IL  60606-4410
Phone: (312) 443-0700
Fax: (312) 443-0336
Email: mkgoodin@lockelord.com

James W. Poradek (#290488)
Katherine S. Razavi (#388958)
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Telephone:  612-766-7000
Facsimile:  612-766-1600
E-mail: jporadek@faegre.com
E-mail: krazavi@faegre.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| AGA Medical Corp., | No. 0:10-cv-03734-JNE-JSM |
| Plaintiff, | |
| v. | **CERTIFICATE OF SERVICE** |
| W. L. Gore & Associates, Inc., | |
| Defendant. | |

I hereby certify that on May 16, 2011, I have caused a copy of GORE'S RESPONSES

AND OBJECTIONS TO AGA'S FIRST AMENDED NOTICE OF 30(B)(6) DEPOSITION

(TOPIC NOS. 1-16) to be served by e-mail upon counsel for Plaintiff AGA Medical

Corporation:

> Alan G. Carlson (acarlson@ccvl.com)
> J. Derek Vandenburgh (dvandenburgh@ccvl.com)
> R. J. Zayed (rzayed@ccvl.com)
> Tara C. Norgard (tnorgard@ccvl.com)
> Dennis C. Bremer (dbremer@ccvl.com)
> Jonathan D. Carpenter (jcarpenter@ccvl.com)
> CARLSON, CASPERS, VANDENBURGH & LINDQUIST, P.A.
> 225 South Sixth Street
> Suite 3200
> Minneapolis, MN 55402

Dated: May 16, 2011

_/s/ Steven Purdy_
Steven M. Purdy

23