**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| AGA MEDICAL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>W. L. GORE & ASSOCIATES, INC.,<br><br>Defendant. | Civil 10-3734 (JNE/JSM)<br><br>**GORE'S REPLY TO AGA'S OPPOSITION TO GORE'S MOTION TO EXCLUDE THE EXPERT REPORT AND OPINIONS OF DR. TIMOTHY J. NANTELL** |

## I.   INTRODUCTION

AGA's damages case has a big problem: Dr. Nantell attributed 100% of the value of HELEX to AGA's alleged invention while at the same time admitting that "it is certainly the case that ***not all*** of the HELEX value is derived from AGA's '738 patent" and that only "***some*** of the HELEX value" has anything to do with AGA's asserted technology. (Dkt. 391-1, ¶99 (emphases added).) Nantell's stated opinions are a direct violation of the Entire Market Value Rule ("EMV Rule") and require exclusion. AGA's response does not challenge, and in fact confirms, each of the key facts underlying Gore's motion. Instead, AGA attempts to distort the law to contrive a reason why Nantell should be permitted to award all HELEX value to AGA even though not all of this value was created by AGA's invention. When the correct law is applied, Nantell's proposed testimony is inadmissible.

## II.   FACTS

AGA's response confirms every one of the key facts establishing that the EMV Rule applies and that Nantell violated it. First, AGA does not dispute that HELEX incorporates additional intellectual property beyond the '738 patent. (Dkt. 387 generally.) Second, AGA

1

admits yet again that the "invention" of the '738 patent relates to improvements to the central portion of pre-existing occluders, not all aspects of occluders. (*Id.* at 31 ("AGA's invention—adding flexibility to the central portion…").)

Third, AGA is unable to erase Nantell's opinion that "it is certainly the case that not all of the HELEX value is derived from AGA's '738 patent." (Dkt. 391-1, ¶99.) Rather than address this opinion directly, AGA attempts to deflect attention to another statement from Nantell, which AGA quotes as follows:

> … the features that drive the demand for the HELEX are derived from using the '738 technology.

(Dkt. 387, 28 (ellipsis in original).) The omitted text at the front of AGA's quotation is significant. Here is the entire sentence from Nantell's report:

> And although it is certainly the case that not all of the HELEX value is derived from AGA's '738 patent, it is just as certain that *some of the HELEX value* is derived from the features that drive demand for the HELEX are derived from using the '738 technology.

(Dkt. 391-1, ¶99 (emphasis added).) Thus, Nantell consistently opines that not all value of HELEX flowed from AGA's alleged invention. Yet when he offers his ultimate opinion on damages, Nantell assigns all HELEX value to AGA in his lost profits opinion and fails to apportion HELEX revenue to isolate only the revenue derived from the asserted claims when determining the royalty base used to calculate a reasonable royalty. (Dkt. 355, 4.) AGA does not contest any of these facts, but instead mischaracterizes the law to allow for Nantell's unsupported calculations. (Dkt. 387 generally.)

### III.   ARGUMENT

**I.   The EMV Rule Applies To The Undisputed Facts Of This Case.**

AGA's discussion of the EMV Rule gets off on the wrong foot when the first case AGA cites expressly states that it is ***not addressing the EMV Rule***. (Dkt. 387, 14 (citing *Depuy Spine,*

2

*Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009) ("In the present case, Medtronic challenges the lost-profits award … under the *Panduit* factors, **not under the 'entire market value' rule**." (emphasis added).)  In fact, neither of AGA's leading authorities—*Depuy* and *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351 (Fed. Cir. 2012)—address the EMV Rule.  AGA's reliance on these cases is far from AGA's only misstep.  Each of AGA's errors of law is addressed below:

### A.     The EMV Rule Applies to Unitary Devices With Unclaimed Features.

It is a fundamental principle of patent damages that the award should bear some relationship to the patentee's contribution to the art.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009) (discussing the objective of determining the correct value of the patented invention); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute.").  Ensuring this relationship presents a challenge when the patentee's invention is used in combination with other technologies.  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 66-67 (Fed. Cir. 2012) (describing the task as "exceedingly difficult and error-prone.").  This situation arises most frequently when the invention is one component of a multi-component device, *id.*, or when the invention is an improvement to a pre-existing apparatus, *Lucent*, 580 F.3d at 1337.

In these situations, the EMV Rule allows a patentee to look beyond revenue directly related to its inventive contribution only if it can show that the invention provides the basis for customer demand such that "the entire market value of the accused product has [] been shown to be derived from the patented contribution."  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011).  If the EMV Rule is not satisfied, the patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages

3

between the patented feature and the unpatented features." *LaserDynamics*, 694 F.3d at 67 (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)); *see also Lucent*, 580 F.3d at 1338-39 (permitting use of a "multiplier [that] accounts for the proportion of the base represented by the infringing component or feature").

One of AGA's central theories is that the EMV Rule goes away if the accused device does not consist of multiple components. (Dkt. 387, 1, 14-16.) As a factual matter, HELEX does consist of multiple components, as AGA acknowledges. (*Id.* at 19 (discussing the "pieces" of HELEX).) Even beyond the implanted device, Nantell's damages calculation included revenues from the delivery catheter and retrieval cord used with HELEX, as well as the sizing balloons used with AGA's competing products. (Dkt. 391-1, ¶52.) None of these components are even arguably part of AGA's alleged invention and none are claimed in the '738 patent, so even under AGA's mistaken understanding, Nantell was required to satisfy the EMV Rule before offering the damages opinion that he provided. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1549-51 (Fed. Cir. 1995).[1]

More important, AGA is legally incorrect that application of the EMV Rule is limited to multi-component devices. The EMV Rule also applies to "allow[] for the recovery of damages based on the value of ***an entire apparatus containing several features*** when the feature patented constitutes the basis for customer demand." *LaserDynamics*, 694 F.3d at 67 (emphasis added);

---

[1] AGA ignores *Rite-Hite* and attempts to justify inclusion of these elements by asserting that they bear a "close relation" to the claimed invention. (Dkt. 387, 19-20.) None of AGA's authority supports a "close relation" exception to the EMV Rule. *Fromson v. Western Litho Plate & Supply Co.* does not address the EMV Rule at all. 853 F.2d 1568, 1578 (Fed. Cir. 1998). *LaserDynamics*, as discussed above, criticized the patentee for going beyond the smallest saleable unit, but also did not adopt a "close relation" exception. 694 F.3d at 67. *Virnetx Inc. v. Apple Inc.* simply held that the patentee had not relied on the EMV Rule but instead apportioned revenue. 2013 U.S. Dist. LEXIS 35631, at *46-47 (E.D. Tex. Feb. 26, 2013).

*see also Lucent*, 580 F.3d at 1336-39 (applying the EMV Rule to a unitary product); *Uniloc*, 632 F.3d at 1318-21 (same). In fact, the second and third elements considered when determining if the EMV Rule is satisfied address whether the patented and unpatented features act together as a "functional unit." (Dkt. 387, 15.) But the EMV Rule requirements "are additive, not alternative." *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 287 (N.D.N.Y. 2009). Thus, arguing that the accused device is a single functional unit is not a free pass. A patentee still must show that its invention provides the basis for customer demand, which is the first element of the EMV Rule test. *Id.*

Contrary to AGA's assertions, determining whether the EMV Rule applies turns not on whether the accused product includes multiple components, but rather on whether the accused product includes technologies other than that of the alleged invention. *Lucent*, 580 F.3d at 1337 (quoting *Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.*, 225 U.S. 604, 614-15 (1912)); *Cornell*, 609 F. Supp. 2d at 288 (the EMV Rule may allow "plaintiffs the advantage of collecting royalties on a system that encompasses more than the claimed invention"). In this case, AGA and Nantell both concede that HELEX does include technology other than the '738 patent. (Dkt. 391-1, ¶¶98-99.) As a result, Nantell was required to satisfy the EMV Rule before proffering his damages opinion.

### B.   There Is No Smallest Saleable Unit Exception to the EMV Rule.

Citing *LaserDynamics*, AGA asserts that "[a]t a minimum a patentee can claim damages based on the smallest saleable patent-practicing unit of the infringing device without having to satisfy the EMVR." (Dkt. 387, 14.) That is not what the Federal Circuit held. The *LaserDynamics* court chastised the plaintiff for including revenue for much more than the smallest saleable unit in its royalty base, 694 F.3d at 68 ("a laptop computer rather than a patent-practicing ODD alone"), but did not hold that damages based on the entire value of the smallest

5

saleable unit is always permissible.[2]  To the contrary, as noted above, *LaserDynamics* stated that the EMV Rule does apply even to an "entire apparatus containing several features." *Id.* at 67.

In other cases, the Federal Circuit has applied the EMV Rule to even the smallest saleable unit. For example, in *Lucent*, the Federal Circuit reversed a jury verdict that was based on the smallest saleable unit of Microsoft Office because a violation of the EMV Rule had nevertheless occurred. 580 F.3d at 1336-39. Similarly, in *Cornell*, Judge Rader criticized the plaintiff's damages expert's testimony because it used as the "royalty base the value of the entire CPU brick, not the invention or the IRB or even the processor," which constituted the smallest saleable unit. 609 F. Supp. 2d at 287-88. The court confirmed that the EMV Rule would still apply even if the smallest saleable units (processors) were used as the damages base. *Id.* at 286 ("For example, in this case, application of the entire market value rule might enable Cornell to obtain royalties not only on the claimed features of the IRB but also on sales of processors which include features beyond the scope of the claimed invention."). *See also Brocade Communs. Sys., Inc. v. A10 Networks, Inc.*, 2013 WL 831528, at *14-15 (N.D. Cal. Jan. 10, 2013) (vacating a jury's awards based on the smallest saleable unit because the EMV Rule was not satisfied); *AVM Techs., LLC v. Intel Corp.*, 2013 WL 126233, at *2-3 (D. Del. Jan. 4, 2013) (holding the EMV Rule can apply to the smallest saleable unit); *Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 726 (E.D. Tex. 2011) (vacating jury award based on the smallest saleable unit because a violation of the EMV Rule occurred.)

---

[2] The other district court cases AGA cites also do not with withstand scrutiny. (Dkt. 387, 22-23.) As discussed above, *Virnetx* simply held that the patentee had not relied on the EMV Rule and instead apportioned revenue. 2013 U.S. Dist. LEXIS 35631 at *46-47. *Broadcom Corp. v. Emulex Corp.*, 2011 U.S. Dist. LEXIS 154416 (C.D. Cal. Dec. 13, 2001) held that there was sufficient evidence for the jury to decide whether the EMV Rule should apply. And this Court in *Toro Co. v. MTD Prods. Inc.*, denied summary judgment without prejudice to a later motion to exclude EMV Rule evidence from trial. 10-00756-JNE-TNL (Dkt. 160, Feb. 5, 2013).

The reason the EMV Rule can apply to the smallest saleable unit was summarized succinctly by the District of Delaware after reviewing the *Lucent* and *Uniloc* decisions rejecting violations of the EMV Rule:

> The use of a saleable unit that is greater than the patented feature is going to introduce *Uniloc* error when the patented feature is a "date picker" whether the saleable unit is a computer loaded with "Outlook" or simply "Outlook." The *Uniloc* error will be greater with the computer loaded with "Outlook" than with "Outlook" alone, but the difference in error is one of degree, not of kind.

*AVM Techs.*, 2013 WL 126233, at *2-3. Thus, while it is a clear error to skip past the smallest saleable unit, selecting the smallest saleable unit as the basis for damages does not guarantee success if that unit continues to encompass technology beyond the asserted invention.

### C. A Patentee Cannot Avoid Application of the EMV Rule By Drafting Its Claims to Include Prior Art Elements.

Finally, AGA asserts that the EMV Rule cannot apply in this case because AGA drafted its claims to encompass prior art elements, such as the enlarged diameter portions and the means for securing, in addition to its alleged improvements to the central portion. (Dkt. 387, 16-18.) This is also an incorrect statement of the law. The Federal Circuit has expressly held that the key to the EMV Rule is proof that "the invention" is the reason customers purchase the accused product. *Lucent*, 580 F.3d at 1338. This analysis is not defined merely by the way the claims are drafted, but by the patentee's inventive contribution, particularly in the case of improvement inventions like AGA's. In *Lucent*, the claim was drafted such that it could not be infringed without the use of a computer. *Id.* at 1310. The plaintiff's first attempt at calculating damages used a computer loaded with Microsoft Outlook as the damages base, but despite the claim scope, the court rejected this opinion prompting a revised analysis that used only revenue from Microsoft Outlook as the damages base. *Id.* at 1338. This revised opinion was again rejected,

however, because the plaintiff did not prove that demand was based on the inventive feature of its claim, which the court characterized as the date picker feature. *Id.* at 1338-39.

This analysis was confirmed in *Dataquill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1027 (S.D. Cal. 2011). There, the patentee argued that the EMV Rule did not apply because the patents-in-suit claimed an entire apparatus. *Id.* The court rejected this argument because, although the claims were drafted broadly, the "patents-in-suit only represent an improvement on an invention." *Id.* Therefore, the plaintiff was required to prove that the improvement provided the basis for customer demand before it could base its damages claim on the entire value of the accused device. *Id.* Similarly, in *Eaton Corp. v. ZF Meritor LCC*, the patents at issue related to improvements to automated mechanical transmissions. 2007 WL 735000, at *1 (E.D. Mich. Mar. 8, 2007). Because the invention was only an improvement, the court required proof of demand for the improved features to satisfy the EMV Rule, and finding none, granted summary judgment of no lost profits. *Id.* at *4-6.

AGA has repeatedly confirmed in this litigation that the "invention" of the '738 patent is an improvement to the central portion of occluders:

- "Fundamentally, what is the '738 patent about? It's a device that closes -- that has a flexible resilient central portion."  (Markman Argument, Dkt. 288, 9-12.)

- "The invention—a flexible, resilient central portion that allows disk lateral movement…" (AGA SJ Opposition, Dkt. 379, 14.)

- "[T]he invention, in the sense of the advance over the prior art, lay not in the metal fabric but in the flexible central portion."  (Mullins Expert Report, Dkt. 381-1, 118.)

- "AGA's invention—adding flexibility to the central portion…"  (AGA Daubert Opposition, Dkt. 387, 31.)

- "[T]he solution reflected in the '738 patent: a device with two disks connected by a flexible waist that allowed the disks to move laterally." (AGA SJ Motion, Dkt. 350, 5.)

Moreover, AGA's covenant not to sue limited the scope of AGA's remaining right to exclude to devices with flexible central portions that are also "resilient" and "stretchable." (Dkt. 376, 9-15.) The EMV Rule requires AGA to demonstrate that these improvements are the basis of customer demand.

AGA's primary authority for arguing that claim scope defeats application of the EMV Rule is *Depuy* and *Presido*. (Dkt. 387, 18, 21, 26-27.) But, as noted above, neither of those cases even addresses the EMV Rule. In fact, while *Depuy* held that *Panduit* demand need not be tied to the inventive aspect of the claims, it suggested that the outcome may have been different had the damages verdict been challenged under the EMV Rule. 567 F.3d at 1331 (criticizing appellant's reliance on case law addressing the EMV Rule, when the subject of the appeal was not the EMV Rule). *See also Brocade*, 2013 WL 831528, at *15 (distinguishing *Panduit* demand from the EMV Rule test).

AGA's only other authority consists of district court cases that also do not support its position. (Dkt. 387, 17-22.) For example, in *Fujitsu Ltd. v. Belkin Int'l, Inc.*, the district court cited the claim scope in rejecting an EMV Rule challenge but at the same time noted that the expert had apportioned the value of the accused product, and thus was not relying on the EMV Rule. 2012 U.S. Dist. LEXIS 164410, at *23-24 (N.D. Cal. Nov. 16, 2012). Similarly, in *University of Pittsburgh v. Varian Medical System*, the court allowed prior art components to be included in the royalty base due to the "artful drafting" of the claims, but also noted that the rate applied to this base had been adjusted downward to "properly account[] for the novel features of the claimed invention." 2012 U.S. Dist. LEXIS 17162, at *26-27 (W.D. Penn. Feb. 10, 2012). Finally, in *Virnetx*, the court found that the plaintiff had not invoked the EMV Rule, and instead

apportioned revenue from the accused products to isolate the value of the invention contribution. 2013 U.S. Dist. LEXIS 35631, at *46-47 (E.D. Tex. Feb. 26, 2013).[3]

Unlike the plaintiffs in each of these cases, Nantell did no apportionment either in his lost profits or reasonable royalty opinions. (Dkt. 355, 4.) Instead, he attributed 100% of HELEX value to AGA's patent. Under Federal Circuit Law, Nantell was not permitted to do so without first satisfying the EMV Rule. Nantell ignored this requirement, however, and expressly opined that the EMV Rule is not satisfied.

## II. Nantell's Express Opinion That The EMV Rule Is Not Satisfied Renders His Damages Opinions Inadmissible.

At the end of its brief AGA half-heartedly argues both that the EMV Rule is satisfied (Dkt. 387, 27-34) and that the Court should wait to consider admissibility of Nantell's testimony in case other evidence at trial happens to support satisfaction of the EMV Rule (*id.* at 34-36.) These arguments are notable in that AGA contradicts the first 26 pages of its own brief by arguing that AGA's own expert did conduct an EMV Rule analysis, apparently concluding that the EMV Rule does indeed apply to the facts of this case. (*See id.* at 33.) They are also remarkable for their scant reference to either Nantell's report or the technology of the remaining asserted claims. Rather than address Nantell's disclosed opinions, AGA focuses on documents produced by Gore, none of which discuss resiliency or stretchability of the central portion of HELEX but instead focus on other unclaimed benefits of HELEX. (*Id.* at 29-32.)

While AGA was busy pouring over the record hoping to identify some evidence for its response that arguably supported satisfaction of the EMV Rule, it missed the fundamental point of Gore's motion—Nantell expressly opined that the EMV Rule is not satisfied. The Federal

---

[3] *Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.*, addressed application of the EMV Rule only after it had granted Philips' motion for summary judgment of non-infringement, rendering the damages analysis moot. 315 F. Supp. 2d 589 (D. Del. 2004), *aff'd* 2005 WL 1606952, *3-4 (Fed. Cir. 2005).

Circuit has held that a "clear derogation of the entire market value rule" occurs when "the entire market value of the accused products has not been shown to be derived from the patented contribution." *Uniloc*, 632 F.3d at 1321. Nantell's opinion is that "it is certainly the case that *not all* of the HELEX value is derived from AGA's '738 patent" and that only "*some* of the HELEX value" is derived from the '738 patent. (Dkt. 391-1, ¶99 (emphases added).) Numerous courts have granted *Daubert* motions or reversed damages awards based on the mere absence of proof that the EMV Rule is satisfied. *E.g.*, *IP Innovation LLC v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 689-90 (E.D. Tex. 2010); *Mformation Techs., Inc. v. Research in Motion Ltd.*, 2012 WL 1142537, at *4 (N.D. Cal. Mar. 29, 2012); *Lucent Techs., Inc. v. Microsoft Corp.*, 2011 WL 7664416, at *8-9 (S.D. Cal. June 16, 2011); *Lighting Ballast Control, LLC v. Philips Elecs. N.A. Corp.*, 2011 WL 7575006, at *5-6 (N.D. Tex. June 10, 2011); *Rolls-Royce PLC v. United Techs. Corp.*, 2011 WL 1740143, at *6-7 (E.D. Va. May 04, 2011). This case falls into a far easier category of cases where the patentee's expert admits that the EMV Rule is not satisfied. *E.g.*, *Uniloc*, 632 F.3d at 1318-20 ("[I]t is undisputed that Product Activation did not create the basis for customer demand."); *Cornell*, 609 F. Supp. 2d at 288 ("Indeed, he acknowledged that 'there are a large number of factors other than [the '115 patent's] out-of-order execution that lead[] to the performance of HP processors.'"). In view of this admission, Nantell's opinion assigning all HELEX value to AGA's alleged invention must be excluded.

Dated: May 15, 2013　　　　　　　　　　　　　　**W.L. GORE & ASSOCIATES, INC.**

　　　　　　　　　　　　　　　　　　　　　　　　*s/ Kevin P. Wagner*
　　　　　　　　　　　　　　　　　　　　　　　　James W. Poradek (#290488)
　　　　　　　　　　　　　　　　　　　　　　　　Kevin P. Wagner (#034008X)
　　　　　　　　　　　　　　　　　　　　　　　　Katherine S. Razavi (#388958)
　　　　　　　　　　　　　　　　　　　　　　　　FAEGRE BAKER DANIELS LLP
　　　　　　　　　　　　　　　　　　　　　　　　2200 Wells Fargo Center
　　　　　　　　　　　　　　　　　　　　　　　　90 South Seventh Street

Minneapolis, MN  55402-3901
Telephone:  612-766-7000
Facsimile:  612-766-1600
E-mail: james.poradek@faegrebd.com
E-mail: kevin.wagner@faegrebd.com
E-mail: kate.razavi@faegrebd.com

Nina Y. Wang (*pro hac vice*)
Jared B. Briant (*pro hac vice*)
Leslie B. Prill (*pro hac vice*)
FAEGRE BAKER DANIELS LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
Telephone:  303-607-3500
Facsimile:  303-607-3600
E-mail: nina.wang@faegrebd.com
E-mail: jared.briant@faegrebd.com
E-mail: leslie.prill@faegrebd.com

Andrew M. McCoy (*pro hac vice*)
FAEGRE BAKER DANIELS LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1750
Telephone:  317-237-0300
Facsimile:  317-237-1000
E-mail: andrew.mccoy@faegrebd.com